WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Richard W. Slack
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ——————————————————x | : | |
| In re: | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : | Case No. 08-13555 (JMP) |
| Debtors. | : | |
| ——————————————————x | : | |
| | : | Adversary Proceeding |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | : | No.: 10-03545 (JMP) |
| Plaintiff, | : | |
| -against- | : | |
| | : | |
| THE BANK OF NEW YORK MELLON | : | |
| CORPORATION, *et al.* | : | |
| Defendants, | : | |
| ——————————————————x | : | |
| | : | |
| DANTE FINANCE PLC MULTI-ISSUER SECURED | : | Case No. 11-cv-2404 (BSJ) (JCF) |
| OBLIGATION PROGRAMME NOTEHOLDERS | : | Case No. 11-cv-2784 (UA) |
| | | |
| LIQUIDATORS OF LEHMAN BROTHERS | | |
| AUSTRALIA LIMITED, | | |
| Appellants, | : | |
| -against- | : | |
| | : | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | : | |
| Appellee, | : | |
| ——————————————————x | | |

**APPELLEE LEHMAN BROTHERS SPECIAL FINANCING INC.'S MOTION TO**
**DISMISS THE APPEALS OF THE "DANTE NOTEHOLDERS" AND THE**
**LIQUIDATORS OF LEHMAN BROTHERS AUSTRALIA LIMITED**

TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

Preliminary Statement ................................................................................................. 1

Statement of Facts ....................................................................................................... 3

      A.      The Belmont Noteholders and the Dante Programme .......................... 3

      B.      The Liquidators of LB Australia ........................................................... 4

      C.      The Adversary Proceeding .................................................................... 4

      D.      The Stay Order ...................................................................................... 5

      E.      The Motions to Intervene ...................................................................... 5

Argument ..................................................................................................................... 6

I.      The Order Is Not a Final Order .................................................................... 8

II.      The Order Is Not an Appealable Collateral Order ....................................... 11

III.      The Requirements of 28 U.S.C. § 158(a)(3) Are Not Satisfied ................... 13

Conclusion ................................................................................................................... 18

**TABLE OF AUTHORITIES**

**CASES**

*Assocs. Fin., Inc. v. Amann*,
 57 B.R. 379 (N.D. Ill. 1986) ............................................................................8

*Century Pac., Inc. v. Hilton Hotels Corp.*,
 574 F. Supp. 2d 369 (S.D.N.Y. 2008)............................................................15

*Chemetron Corp. v. Jones*,
 72 F.3d 341 (3d Cir. 1995)................................................................................8

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
 No. M-47, 01-16034, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ......................7, 13, 14

*Ermenegildo Zegna Corp. v. Zegna*,
 133 F.3d 177 (2d Cir. 1998)..............................................................................8

*Flor v. BOT Fin. Corp.*,
 79 F.3d 281 (2d Cir. 1996)..............................................................................16

*German v. Fed. Home Loan Mortg. Corp.*,
 896 F. Supp. 1385 (S.D.N.Y. 1995).................................................................14

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
 485 U.S. 271 (1988)........................................................................................11

*In re Chateaugay Corp.*,
 120 B.R. 707 (S.D.N.Y. 1990)...........................................................................8

*In re Enron Creditors Recovery Corp.*,
 410 B.R. 374 (S.D.N.Y. 2008)................................................................6, 7, 13

*In re Kassover*,
 343 F.3d 91 (2d Cir. 2003)..............................................................................13

*In re Ribkov Realty, Corp.*,
 No. 99 Civ. 984(JG), 1999 WL 529557 (E.D.N.Y. July 21, 1999) ..............7, 8, 9

*In re Teligent, Inc.*,
 No. 04 Civ. 5394, 2004 WL 1921851 (S.D.N.Y. Aug. 30, 2004) .......................8

*In re Worldcom, Inc.*,
 No. M-47 (LTS), 02-13533 (AJG), 2005 WL 1208519 (S.D.N.Y. May 19, 2005)..........11

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990)....................................................................13, 15

*Liebert v. Levine (In re Liebert)*,
    No. 94-44257, 2004 WL 764709 (S.D.N.Y. Apr. 9, 2004) ...............................14

*Lora v. O'Heaney*,
    602 F.3d 106 (2d Cir. 2010).................................................................................6

*MCI Worldcom Commc'ns v. Commc'ns Network Int'l, Ltd. (In re Worldcom, Inc.)*,
    358 B.R. 76 (S.D.N.Y. 2006).............................................................................16

*Marlin v. U.S. Tr.*,
    333 B.R. 14 (W.D.N.Y. 2005) ..........................................................................14

*Martens v. Smith Barney*,
    238 F. Supp. 2d 596 (S.D.N.Y. 2003)................................................................13

*MasterCard Int'l Inc. v. Visa Int'l Servs. Assoc., Inc.*,
    471 F.3d 377 (2d Cir. 2006)..............................................................................10

*Max Daetwyler Corp. v. Meyer*,
    575 F. Supp. 280 (E.D. Pa. 1983) .....................................................................16

*O'Leary v. Maxum Marine (In re Orange Boat Sales)*,
    239 B.R. 471 (S.D.N.Y. 1999)..........................................................................13

*Rhode Island v. U.S. Envtl. Prot. Agency*,
    378 F.3d 19 (1st Cir. 2004)................................................................................12

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985)...........................................................................................11

*Roth v. Deak & Co. (In re Deak & Co.)*,
    65 B.R. 410 (S.D.N.Y. 1986)..............................................................................9

*S.E.C. v. Credit Bancorp, Ltd.*,
    103 F.Supp.2d 223 (S.D.N.Y. 2000).................................................................15

*S.E.C. v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010)..............................................................................11

*Sajim Oleochemicals v. M/V Shropshire*,
    278 F.3d 90 (2d Cir. 2002)..................................................................................7

*Stringfellow v. Concerned  Neighbors in Action*,
    480 U.S. 370 (1987).................................................................................9, 12

*United States v. Bond*,
    No. 09-CV-1824, 2009 WL 3254472 (E.D.N.Y. Oct. 9, 2009)........................................14

*United States v. City of Milwaukee*,
    144 F.3d 524 (7th Cir. 1998) ...........................................................................10

*Weber v. U.S. Tr.*,
    484 F.3d 154 (2d Cir. 2007)............................................................................13

*Westwood Pharm., Inc. v. Natural Fuel Gas Dist. Corp.*,
    964 F.2d 85 (2d Cir. 1992)..............................................................................14

*Whiting v. Lacara*,
    187 F.3d 317 (2d Cir. 1999)........................................................................7, 11, 12

*Yerushalmi v. Shiboleth*,
    405 B.R. 44 (E.D.N.Y. 2009) .......................................................................14, 16

## STATUTES

28 U.S.C. § 1292(b) ............................................................................... *passim*

28 U.S.C. § 158(a) ....................................................................................7

28 U.S.C. § 158(a)(1)...................................................................................6

28 U.S.C. § 158(a)(3)........................................................................1, 7, 13, 17

## OTHER AUTHORITY

Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*,
    88 HARV. L. REV. 607 (1975) ..........................................................................14

Lehman Brothers Special Financing Inc. ("LBSF"), a debtor and debtor in possession in the above-captioned jointly administered chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, "Debtors"), hereby submits this motion to dismiss the appeals of certain "Dante Noteholders" (the "Belmont Noteholders") and the Liquidators of Lehman Brothers Australia Limited (the "Liquidators," and together with the Belmont Noteholders, "Appellants") from the Bankruptcy Court's order, dated February 18, 2011 (the "Order"), denying without prejudice Appellants' motions to intervene in an adversary proceeding that has been stayed by the Bankruptcy Court (the "Adversary Proceeding").

### PRELIMINARY STATEMENT

LBSF moves to dismiss the appeals of Appellants for lack of jurisdiction because the appeals are from a non-final Order of the Bankruptcy Court denying their motions to intervene in litigation that is currently stayed. The Bankruptcy Court denied the motions to intervene without considering the merits of intervention, expressly stating that its Order was without prejudice to Appellants refiling their motions once the Bankruptcy Court lifts its October 20, 2010 order staying the Adversary Proceeding pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) (the "Stay Order"). As discussed in more detail below, this Court does not have jurisdiction over these appeals because: (1) the Order is not a final order, (2) the Order does not meet the standards of the collateral order doctrine, and (3) the Order does not warrant interlocutory review under 28 U.S.C. § 158(a)(3).

In addition to these fundamental jurisdictional defects, this Court should dismiss the appeals because they amount to a wholly improper attempt to collaterally attack the Stay Order, which is itself an interlocutory order and one not before this Court on appeal. The Bankruptcy Court entered the Stay Order, which stayed, until at least July 20, 2011, all litigation relating to the Adversary Proceeding to permit, among other things, Debtors to engage in an orderly

alternative dispute resolution process whereby Debtors might resolve numerous matters – many involving significant receivables for the estates – that would be extremely expensive and time consuming to litigate.  The Bankruptcy Court has also entered orders creating an alternative dispute resolution process in which Debtors are attempting to resolve these disputes.  Case No. 08-13555 (JMP), ECF Nos. 5207, 14789.

The dispute resolution procedures adopted by the Bankruptcy Court have been a huge success.  To date, Debtors have brought 118 mediations against 144 derivative counterparties pursuant to the ADR orders.  Debtors have resolved 70 matters with 81 counterparties and have brought more than $701,491,966.66 into the estates as a result.  Of the 36 matters where mediations have concluded, 32 have been resolved, an impressive rate of success of almost 90 percent.  To facilitate this ADR process, the Stay Order prohibits all motion practice until July 20, 2011.  Appellants' motions to intervene violate the Stay Order.  Appellants' attempt to appeal prematurely Judge Peck's interlocutory Order denying their motion to intervene without prejudice is designed to seek to force the Bankruptcy Court to lift the Stay Order to permit Appellants to intervene and engage in full-blown litigation.  This would not only interfere with the Bankruptcy Court's discretion to control its docket, but upend the Bankruptcy Court's carefully planned (and currently successful) ADR process, open up the floodgates to countless other would-be intervenors, and benefit Appellants at the expense of countless other parties.

Judge Peck denied Appellants' motions to intervene without reaching the merits of Appellants' arguments on the grounds that they violated the Stay Order.  Because that ruling was without prejudice, and because the Adversary Proceeding is stayed, Appellants have suffered no harm as a result of Judge Peck's decision: they may simply re-file their motions to intervene upon expiration of the stay, and Judge Peck may then for the first time consider their motions on

the merits.  Any decision that Judge Peck issues on the merits at that time will be subject to appellate review.  If allowed to proceed, the present appeals would both waste judicial resources and unfairly allow Appellants multiple chances to appeal the same issue.  Accordingly, the Court should grant LBSF's motion to dismiss.

STATEMENT OF FACTS

**A.      The Belmont Noteholders and the Dante Programme**

The Belmont Noteholders consist of approximately twenty-nine Australian companies, institutions, and other persons that hold ten series of notes in special purpose vehicles ("SPVs") that were created in connection with a synthetic debt repackaged note issuance program known as the "Dante Programme."  Case No. 10-03545 (JMP), ECF Nos. 14 ¶ 3, 9 at 1 n.1.  The entire Dante Programme consists of hundreds of transactions, each known as a "series."  *Id.*  The issuing SPV for each series issued notes to a very large but unknown number of noteholders.  *Id.*  In almost all cases, LBSF does not know the identities of noteholders, though the numbers of noteholders in the Dante Programme could well be in the many hundreds or thousands.  *Id.*  The Belmont Noteholders do not purport to act on behalf of any other Dante noteholders.

In a typical SPV structure (like the one here), an SPV issues notes to noteholders pursuant to a trust deed.  A trustee is appointed under the trust deed to act on behalf of noteholders.  Separately, the SPV enters into a swap agreement with LBSF.  The money obtained from the sale of notes is used to purchase various assets that act as collateral for the payments on the notes and on the swap agreement with LBSF.  The noteholders – whose interests are represented by the trustee – are not parties to the trust deed, and have no contractual relationship with the swap counterparty.

Many of the disputes with respect to the Dante series have been resolved consensually following Debtors' filing of their chapter 11 cases, although there are more than 100 Dante series

in which the parties have not yet settled their disputes, including the ten Belmont series.  *Id.*, ECF No. 14 ¶ 4.  The Adversary Proceeding below (in which the Appellants seek to intervene) addresses 108 Dante series in which the proceeds of collateral have not yet been distributed to noteholders or LBSF.  *Id.*, ECF Nos. 1, 14 ¶ 5.  There are additional pending (but stayed) adversary proceedings brought by Debtors that relate to numerous additional distributed and undistributed Dante series.  *Id.*

### B.     The Liquidators of LB Australia

Like the Belmont Noteholders, Lehman Brothers Australia Limited ("LB Australia") is a noteholder that holds interests in five Dante series.  *Id.*, ECF No. 11 at Parbery Aff. ¶ 4 n.1.  In addition, LB Australia contends that it acted as a placement agent for the sale of Dante notes to third parties, and maintains that third parties have submitted claims against it as a result of its actions as placement agent, including claims for negligence, misleading and deceptive conduct, and breach of fiduciary duty.  *Id.* ¶¶ 4, 20.

### C.     The Adversary Proceeding

On September 14, 2010, LBSF filed the Adversary Proceeding against the trustees and various issuers of the Dante series.  *Id.*, ECF No. 1.  Among the 110 defendants to this suit are the *issuers* to the ten transactions involving the Belmont Noteholders, and the *issuers* to the five transactions involving LB Australia.  *Id.*; *id.*, ECF No. 9 at 1 n.1 (listing relevant Belmont series); *id.*, ECF No. 11 at Parbery Aff. ¶ 4 n.1.  Appellants are *not* defendants in this action.

LBSF's complaint seeks a declaratory judgment that certain contractual provisions in the governing transaction documents (the "Modification Provisions") violate the *ipso facto* prohibitions of the Bankruptcy Code and the automatic stay.  *Id.*, ECF No. 1 Counts I, II.  In the alternative, LBSF alleges that the Modification Provisions, if enforceable, were preferential transfers, constructive fraudulent transfers, or unauthorized postpetition transfers avoidable

4

under the Bankruptcy Code.  *Id.* Counts III, IV, V.  Simultaneous with filing the Adversary Proceeding, LBSF filed its motion seeking an order staying all activity in the case (and in all similarly filed actions).

### D.    The Stay Order

On October 20, 2010, Judge Peck granted LBSF's motion to stay the Adversary Proceeding, which stayed the action for nine months, at least until July 20, 2011.  Case No. 08-13555 (JMP), ECF No. 12199 at 2.  The Stay Order includes the express directive that "all motion practice and contested hearings are prohibited" during the stay period.  *Id.*  During the time that the stay is in place, the Stay Order permits Debtors to "employ the Derivative ADR Procedures or other procedures to attempt to consensually resolve their disputes."  *Id.* at 3.  The Stay Order also provides that the stay may be lifted only by (i) Debtors, in consultation with the Creditors' Committee, or a party authorized by Judge Peck to prosecute an avoidance action on behalf of Debtors, or (ii) "the [Bankruptcy] Court for good cause shown upon an application by an Avoidance Action Defendant and after notice and a hearing with an opportunity to respond by Debtors and the Creditors' Committee."  *Id.*  The Stay Order defines "Avoidance Action Defendants" as "each of the known and identified defendants to the Avoidance Actions or their agents or representatives."  *Id.* at 2.  The Avoidance Action Defendants are the trustees and the relevant issuers of Dante and other notes.  Appellants are not Avoidance Action Defendants, their agents, or representatives.

### E.    The Motions to Intervene

Notwithstanding the Stay Order and its prohibition on motion practice, the Belmont Noteholders and the Liquidators filed motions to intervene (collectively, the "Intervention Motions") on January 23, 2011 and January 25, 2011, respectively.  Case No. 10-03545 (JMP), ECF Nos. 9, 11.  Judge Peck heard oral argument on the Intervention Motions on February 16,

2011.[1]  In denying the Intervention Motions, Judge Peck recognized the need for an effective alternative dispute resolution program to "manage the vast number of very significant commercial disputes that are part of the portfolio of adversary proceedings."  *Id.*, ECF No. 22 at 145:18-20.  He noted that the Intervention Motions were attempts to "open[ ] up stayed litigation," *id.* at 145:19-20, and that they comprised a "Trojan horse for what is really a motion to vacate the stay."  *Id.* at 146:7-8.  Judge Peck found that "this sort of litigation, gamesmanship, while understandable is really inappropriate during the period of a stay designed to benefit the entire administration of the Lehman cases."  *Id.* at 147:18-21.  Judge Peck concluded by denying the Intervention Motions "without prejudice for the reasons stated" at the hearing.  *Id.* at 147:10. Judge Peck entered the Order denying intervention on February 18, 2011.  *Id.*, ECF No. 19.

The Belmont Noteholders filed their notice of appeal, docketed as 11-cv-2404-(BSJ), on February 25, 2011.  *Id.*, ECF No. 20.  The Liquidators filed their notice of appeal, docketed as 11-cv-2784-(UA), on March 4, 2011.  *Id.*, ECF No. 21.

### ARGUMENT

The Court should dismiss these appeals for lack of jurisdiction.  These are not appeals as of right under 28 U.S.C. § 158(a)(1) – such appeals are permitted only from underlying bankruptcy court orders that satisfy the final judgment rule.  *In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 378 (S.D.N.Y. 2008) (explaining that "[l]ike appeals from district courts, appeals from the bankruptcy court are subject to the final judgment rule"); *see also Lora v. O'Heaney*, 602 F.3d 106, 112 (2d Cir. 2010) (noting that the final judgment rule "seeks to avoid the waste of time and the delay in reaching trial finality which ensue when piecemeal appeals are permitted" (internal citations omitted)).  Here, the Order is not final because it was issued

---

[1] A transcript of this hearing was filed as Case No. 10-03545 (JMP), ECF No. 22.

without prejudice and because it does not entail a final disposition of the Adversary Proceeding or of any of Appellants' purported interests therein.  *See In re Ribkov Realty, Corp.*, No. 99 Civ. 984(JG), 1999 WL 529557, at \*14 (E.D.N.Y. July 21, 1999) (holding that a district court lacks jurisdiction over a dismissal of an adversary proceeding without prejudice by the bankruptcy court).  Accordingly, the Order is interlocutory, and Appellants may not appeal as of right.

Nor may Appellants appeal from the Order under the collateral order doctrine or pursuant to 28 U.S.C. § 158(a)(3)'s standards for interlocutory appeal.  *In re Enron Creditors Recovery Corp.*, 410 B.R. at 378.  Appellants do not purport to, and cannot, meet the standards for either type of appeal.  The Order does not satisfy the collateral order exception because it did not conclusively determine Appellants' right to intervene, and because it will not be effectively unreviewable if these appeals are dismissed.  *See Whiting v. Lacara*, 187 F.3d 317, 319-20 (2d Cir. 1999).  And the Order does not warrant an interlocutory appeal under 28 U.S.C. § 158(a) because there is no controlling question of law, no substantial ground for difference of opinion regarding any controlling question of law, and because immediate appeal will not materially advance the ultimate termination of the litigation given that litigation on the merits is stayed.  *See* 28 U.S.C. § 1292(b); *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. M-47, 01-16034, 2006 WL 2548592, at \*3 (S.D.N.Y. Sept. 5, 2006).

These appeals violate not only the applicable standards of appellate jurisdiction, but basic principles of judicial economy and fairness as well: Appellants should not be permitted to prematurely appeal a non-final order and thereby use appellate review to attempt to disrupt the successful ADR process, which has been carefully designed to resolve numerous complex disputes in an orderly and efficient manner.  *See Sajim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002) ("Unnecessary delay of the arbitral process through appellate review

is disfavored." (citing *Ermenegildo Zegna Corp. v. Zegna*, 133 F.3d 177, 180 (2d Cir. 1998))).

Accordingly, this Court should grant LBSF's motion to dismiss.

## I.   THE ORDER IS NOT A FINAL ORDER.

Many decisions, from this Circuit and others, make clear that the Order is interlocutory rather than final because it was issued without prejudice.  *See Chemetron Corp. v. Jones*, 72 F.3d 341, 350 (3d Cir. 1995) (holding that the district court did not have jurisdiction to hear an appeal from a bankruptcy court order dismissing claims in an adversary proceeding without prejudice); *In re Teligent, Inc.*, No. 04 Civ. 5394, 2004 WL 1921851 (S.D.N.Y. Aug. 30, 2004) ("There is authority in this Circuit for the proposition that a bankruptcy court's order granting a motion to dismiss an adversary proceeding without prejudice is an interlocutory order."); *In re Chateaugay Corp.*, 120 B.R. 707, 711-12 (S.D.N.Y. 1990) (holding that the district court did not have jurisdiction over a chapter 11 creditors' committee's appeal of an order denying its application for oral depositions because the bankruptcy court had indicated that the denial would not prejudice the committee's renewal of its application); *Assocs. Fin., Inc. v. Amann*, 57 B.R. 379, 380 (N.D. Ill. 1986) (holding that a bankruptcy court order dismissing a complaint with leave to amend was not a final order).

Indeed, even those bankruptcy court orders that dismiss adversary proceedings in their entirety are considered interlocutory if they are issued without prejudice.  In *Ribkov Realty*, the bankruptcy court dismissed plaintiffs' adversary proceeding complaint against the debtor because it failed to allege whether the proceeding was core or non-core.  *In re Ribkov Realty Corp.*, 1999 WL 529557, at *14.  The bankruptcy judge in *Ribkov* stated on the record that the dismissal was without prejudice.  *Id.*  On appeal, the district court raised the issue of its jurisdiction *sua sponte* and dismissed on the ground that "the dismissal of an adversary proceeding without prejudice is not an appealable final order."  *Id.* (citations omitted).

Likewise, bankruptcy court orders regarding the lifting or modification of a stay may not be appealed if they are issued without prejudice.  In *Roth v. Deak & Co. (In re Deak & Co.)*, the Court held that it lacked jurisdiction over a bankruptcy court's order denying without prejudice a request to modify the automatic stay to permit enforcement of a judgment against the debtor in an Israeli court.  65 B.R. 410, 410-11 (S.D.N.Y. 1986).  The bankruptcy court in *Roth* had lifted the stay to allow the movant to prosecute its claim against the debtors in the Israeli court, but had refused to simultaneously modify the stay to allow enforcement of an Israeli judgment that the movant had not yet obtained.  *Id.* at 411.  The *Roth* Court's decision relied on the fact that the bankruptcy court made its ruling explicitly without prejudice to the movant's ability to seek modification of the stay once the favorable judgment was obtained from the Israeli court.  *Id.*

The Order appealed from in the present case is even more plainly interlocutory than those at issue in *Ribkov Realty* and the other cases dismissing appeals from bankruptcy court orders dismissing adversary proceedings.  The Order does not dismiss the Adversary Proceeding, which is still pending in the Bankruptcy Court, but – like the *Roth* court's denial of the movant's request for modification of the automatic stay – merely preserves the terms of a pre-existing stay.  Judge Peck made clear in his oral ruling that his decision was not final by stating that "[i]t is difficult for me . . . to see a reason why I should grant these motions *now*."  Case No. 10-03545 (JMP), ECF No. 22 at 145:16-18 (emphasis added).  Because Judge Peck's ruling was not based on the merits, and because it was issued without prejudice, Appellants may renew the Intervention Motions after the Stay Order expires or is otherwise modified for a decision on the merits at that time.  If their intervention request is denied at that time, Appellants will be able to appeal from that denial, which, unlike the Order, will be final.  *See Stringfellow v. Concerned*

*Neighbors in Action*, 480 U.S. 370, 377 (1987) ("An intervenor, whether by right or by permission, normally has the right to appeal an adverse final judgment by the trial court.").

The fact that the Adversary Proceeding is stayed and there is no pending ruling of significance in the action distinguishes this case from others where courts have heard appeals from denials of motions to intervene; such cases typically involve an impending ruling in the underlying proceeding that may be prejudicial to the interests of the appellants therein. *See, e.g.*, *MasterCard Int'l Inc. v. Visa Int'l Servs. Assoc., Inc.*, 471 F.3d 377, 379-81 (2d Cir. 2006) (holding interlocutory appellate review of the denial of an intervention motion was warranted because appellant suffered the risk of an adverse and prejudicial decision in the lower court in the near future). Appellants, in contrast, are in no such danger of harm from a prejudicial ruling because the Adversary Proceeding has been stayed. This case is much more similar to *United States v. City of Milwaukee*, 144 F.3d 524 (7th Cir. 1998), in which the Seventh Circuit held that the dismissal of a motion to intervene was not a final judgment and that it lacked jurisdiction to hear an appeal therefrom. The district court had denied the movants' Rule 24 motion for failure to conform to procedural requirements, and stated that it would not consider the motion until the movant complied with proper procedure. *Id.* at 530. The Seventh Circuit held that the order was not final because it was not a "definitive adjudication of the [movant's] right to intervene." *Id.* The Seventh Circuit considered that the district court denied the motion without prejudice but did not "accord talismanic importance" to the words "without prejudice," instead looking to "the totality of the circumstances in determining that the district court's order in this particular case is not final." *Id.* at 531.

Similarly, the totality of the circumstances demonstrates that the Order is not final because it is not a "definitive adjudication" of Appellants' right to intervene in the Adversary

Proceeding.   Appellants need only wait for the expiration of the stay before re-filing the Intervention Motions.  Accordingly, the Court should dismiss the appeals for lack of jurisdiction.

## II.   THE ORDER IS NOT AN APPEALABLE COLLATERAL ORDER.

The Appellants have not invoked the collateral order exception to the final judgment rule. Nevertheless, it is clear that the Order does not qualify for appeal under that limited exception, which applies to "a small set of prejudgment orders that are collateral to the merits of an action and too important to be denied immediate review."  *S.E.C. v. Rajaratnam*, 622 F.3d 159, 167 (2d Cir. 2010) (internal citations omitted).   "The collateral order doctrine 'is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal.'" *Whiting*, 187 F.3d at 319-20 (quoting *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31 (1985)).  The collateral order exception only applies if the order (i) conclusively determines the disputed question, (ii) resolves an important issue completely separate from the merits of the action, and (iii) will be effectively unreviewable on appeal from a final judgment.  *Whiting*, 187 F.3d at 320.   "A decision is not reviewable as a collateral order unless it satisfies all three requirements."  *In re Worldcom, Inc.*, No. M-47 (LTS), 02-13533 (AJG), 2005 WL 1208519, at *1 (S.D.N.Y. May 19, 2005) (internal citations omitted).  The Order is not a collateral order because it fails to satisfy any of these requirements.

The Order does not meet the first requirement because it did not deal with, much less conclusively establish, whether Appellants are entitled to intervene in the adversary proceeding. An order does not conclusively determine the disputed question unless it is "made with the expectation that it will be the final word on the subject addressed."  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988) (quotation omitted).  Judge Peck did not reach the merits of Appellants' arguments; instead, he denied them on the grounds that it was "procedurally inappropriate" for Appellants to move for intervention while the Adversary

11

Proceeding was stayed.  Case No. 10-03545 (JMP), ECF No. 22 at 146:4-14.  Moreover, Judge Peck explicitly stated that his ruling was made without prejudice.  *Id.* at 147:10; *id.*, ECF No. 19 at 2.  As a result, Appellants may file the Intervention Motions again once the stay is lifted.  Accordingly, the Order is not a conclusive determination and thus fails to meet the first requirement of the collateral order doctrine.

For the same reason, the Order does not meet the second requirement:  it does not "resolve[ ] an important issue completely separate from the merits of the action."  *Whiting*, 187 F.3d at 320.  The Order does not resolve *any* issue because it merely defers resolution until after the stay terminates.  Indeed, the Order is no more appealable than a decision of the Court to simply defer ruling on the motion to intervene until such time as the stay is lifted.

The Order likewise cannot meet the third requirement of the collateral order exception because it will not be effectively unreviewable on appeal after final judgment.  An interlocutory order is only effectively unreviewable on appeal if the putative intervenors' interest would be "irretrievably lost in the absence of an immediate appeal."  *Stringfellow*, 480 U.S. at 376.  The Adversary Proceeding is stayed and no rulings will be entered therein: as a result, Appellants will not irretrievably lose anything if they are not allowed to appeal immediately.  There can be no risk of harm to a party's interests in a proceeding in which nothing is happening.  And as discussed above, *supra* Part I, Appellants will be able to appeal any final judgment that the Bankruptcy Court enters on the merits of their Intervention Motions after the stay expires.  *See Rhode Island v. U.S. Envtl. Prot. Agency*, 378 F.3d 19 (1st Cir. 2004) (holding that the third prong of the collateral order doctrine was unsatisfied where the order appealed from was tentative and where judicial review would be available after entry of a final judgment).  Because

the Order does not meet any of the requirements of the collateral order doctrine, Appellants are not entitled to appeal therefrom.

## III.   THE REQUIREMENTS OF 28 U.S.C. § 158(A)(3) ARE NOT SATISFIED.

Similarly, while Appellants do not purport to seek interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3), even if they had done so, they cannot satisfy the relevant standards.  Section 158(a)(3) provides a district court with limited "discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court."  *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003). Courts considering the availability of interlocutory appeal under § 158(a)(3) apply the standards set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from district courts to the courts of appeals.  *In re Enron Creditors Recovery Corp.*, 410 B.R. 374, 379 (S.D.N.Y. 2008). Section 1292(b) allows interlocutory appeal where (1) the order being appealed involves a controlling question of law, (2) there is substantial ground for difference of opinion regarding that controlling question of law, and (3) an immediate appeal would materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *Enron Corp.*, 2006 WL 2548592, at *3.  The decision whether to hear an interlocutory order of a bankruptcy court "lies with the district court's discretion."  *Id.*; *see also O'Leary v. Maxum Marine (In re Orange Boat Sales)*, 239 B.R. 471, 473 (S.D.N.Y. 1999).

Despite this discretion, interlocutory appeal under section 1292(b) is rarely granted within the Second Circuit and is "strictly limited to the precise conditions stated in the law." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990); *see also Martens v. Smith Barney*, 238 F. Supp. 2d 596, 600 (S.D.N.Y. 2003) ("Section 1292(b) was not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation . . . or to be a vehicle to provide early review of difficult rulings in hard cases." (internal citations omitted)); *Weber v. U.S. Tr.*, 484 F.3d 154, 159 n.3 (2d Cir. 2007) ("Congress did not intend

28 U.S.C. § 1292(b) to serve an error-correction function." (citing Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 HARV. L. REV. 607, 609 (1975))).  Because strong policy considerations militate against time-consuming and piecemeal litigation, "[t]he Second Circuit has repeatedly 'urged the district courts to exercise great care in making a § 1292(b) certification' . . . [and c]ertification of a permissive interlocutory appeal is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation.'" *Liebert v. Levine (In re Liebert)*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (citing *Westwood Pharm., Inc. v. Natural Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992) and *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)); *see also United States v. Bond*, No. 09-CV-1824, 2009 WL 3254472, at *5 (E.D.N.Y. Oct. 9, 2009) ("The interlocutory appeal is strongly disfavored in federal courts as it may prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions . . . ." (internal citations omitted)); *Marlin v. U.S. Tr.*, 333 B.R. 14, 20 (W.D.N.Y. 2005).

As a result, Second Circuit courts grant interlocutory appeal under section 1292(b) only with caution and in the rare case in which the movant demonstrates that "exceptional circumstances" merit appellate review of a non-final order.  *Enron Corp.*, 2006 WL 2548592, at *3 (explaining that "interlocutory appeals from bankruptcy courts' decisions are disfavored in the Second Circuit" and that interlocutory appeal under section 1292 "is warranted only when the movant demonstrates the existence of exceptional circumstances sufficient to overcome the general aversion to piecemeal litigation" (internal citations omitted)); *Yerushalmi v. Shiboleth*, 405 B.R. 44, 48 (E.D.N.Y. 2009) (denying a motion for leave to appeal under section 1292(b)

because "interlocutory appeals are strongly disfavored in federal practice" and because "Appellant has not met his burden of showing 'exceptional circumstances' to warrant appellate review of an interlocutory order." (internal citations omitted)).

Appellants do not even purport to present any such exceptional circumstances, and no such circumstances exist.  The Order did not reach the merits of Appellants' Intervention Motions, so it does not involve any controlling question of law.  There is no substantial ground for difference of opinion regarding the Order, and immediate appeal would not materially advance the ultimate termination of this litigation.  Indeed, even if the appeals are allowed and the Appellants are ultimately permitted to intervene, nothing herein requires the Bankruptcy Court to lift the stay of the Adversary Proceeding.  If anything, these appeals, if allowed now, could prolong the underlying litigation indefinitely.  As a result, these appeals do not satisfy any of section 1292(b)'s elements.

"A question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008) (citations omitted).  As part of its consideration, the court should ask whether "reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or, the certified issue has precedential value for the large number of cases."  *S.E.C. v. Credit Bancorp, Ltd.*, 103 F.Supp.2d 223, 227 (S.D.N.Y. 2000) (internal citations omitted); *compare with Klinghoffer*, 921 F.2d at 25 (holding that interlocutory appeal under section 1292(b) is "strictly limited to the precise conditions stated in the law.").  Here, reversal of the Order would not terminate the Adversary Proceeding, and would not affect the merits of the right to intervene, because the Order never reached the merits of the Intervention

Motions.  The Order also lacks any issue that would have significant precedential value. Therefore, the Order does not satisfy the first prong of section 1292(b).

As to the second prong of section 1292(b), Second Circuit courts have held that a substantial ground for difference of opinion exists only if there is "a genuine doubt as to whether the bankruptcy court applied the correct legal standard." *MCI Worldcom Commc'ns v. Commc'ns Network Int'l, Ltd. (In re Worldcom, Inc.)*, 358 B.R. 76, 79 (S.D.N.Y. 2006); *Yerushalmi*, 405 B.R. at 48 (finding that appellant had failed to establish a substantial ground for difference of opinion because "upon reviewing Appellant's opposition papers, including Appellant's Brief, the issues raised in Appellant's appeal do not collectively establish a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard . . . ." (internal citation omitted)); *Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir. 1996) (holding that "it is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute" (citing *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983))).  In this case, Appellants' statements of issues on appeal fail to identify any a genuine issue as to whether the bankruptcy court applied the correct legal standard in denying intervention.

In a similar vein, the appeals do not meet section 1292(b)'s third prong, because they will not materially advance the ultimate termination of the litigation.  To the contrary, these appeals may well substantially prolong this litigation by disrupting the stay that is in effect and by undermining the ADR Process that has been structured to promote the efficient and speedy resolution of countless disputes without the need for complex and time-consuming litigation.  As LBSF argued in its original opposition to the Intervention Motions, allowing Appellants to

intervene in this proceeding could inundate the Bankruptcy Court with motions from perhaps hundreds of noteholders claiming the right to participate in adversary proceedings without regard for the Stay Order and the Bankruptcy Court's discretion to control its own docket.  Such a wave of motions to intervene by even a small fraction of that number of noteholders would drastically alter the nature of an already complicated adversary proceeding by transforming it into a free-for-all where countless noteholders, emboldened by Movants' example, could seek to direct litigation (perhaps in contrary and conflicting ways) and to circumvent the Bankruptcy Court by submitting motions to intervene filed solely for appellate purposes.  Accordingly, instead of favoring this appeal, the third prong of the section 1292(b) standard militates strongly *against* it.  Appellants should not be allowed to flagrantly disregard the Stay Order, to open the Adversary Proceeding up to full-blown litigation, and to undermine the efficient and beneficial ADR process envisioned by the Bankruptcy Court.  Because their appeals fail to satisfy any prong of the section 1292(b) standard, they should not be permitted to proceed as interlocutory appeals under section 158(a)(3).

## CONCLUSION

For the reasons stated above, LBSF requests that this Court dismiss the appeals filed by

the Belmont Noteholders and the Liquidators.

Dated: New York, New York
       May 9, 2011

 /s/  *Richard W. Slack*

Ralph I. Miller
Richard W. Slack
Peter Gruenberger
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession
