KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

ANDREW K. GLENN
212-506-1747

ATLANTA
HOUSTON
NEWARK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/24/11

May 23, 2011

The Honorable Colleen McMahon
United States District Court Judge
United Sates District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, 11-cv-02404-BSJ; *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, 11-cv-02784-BSJ

Dear Judge McMahon:

**MEMO ENDORSED**

The Appellants in the above-referenced appeals (the "Appeals") are a group of holders (the "Dante Noteholders") of notes issued under the Dante Finance PLC Multi-Issuer Secured Obligation Programme (the "Dante Programme"), and Liquidators of the estate of Lehman Brothers Australia Limited (the "Australian Liquidators"). The Honorable Barabara S. Jones is the assigned judge in the Appeals. We respectfully submit this letter to inform Your Honor that we believe the Appeals are related to the recent bankruptcy appeal that had been pending before Your Honor involving the Dante Programme and respectfully request that Appeals be transferred to Your Honor in the interest of judicial economy and efficiency. We previously made this request to Judge Jones, who informed us that we should address this request to Your Honor.

The discussion below summarizes the complex history of the Dante Programme and the background of the cross-border litigation of the parties' disputes.

**A.   The Dante CDO Programme**

In 2002, Lehman Brothers Special Financing Inc.'s ("LBSF") English affiliate, Lehman Brothers International (Europe) ("LBIE"), arranged the Dante Programme, which was used by Lehman-related special purpose vehicles (the "Issuers") to issue various series of synthetic collateralized debt obligations, or "CDOs." The Issuers and LBSF entered into credit default swap agreements in connection with each series of notes.

BNY Corporate Trustee Services Limited ("BNY") acts as collateral trustee for the benefit of the relevant Issuer's various secured creditors for that series, including LBSF and the noteholders. A key element of the Dante Programme—and the core issue at stake in the adversary proceeding—is the priority of distributions from the collateral payable by BNY. In particular, under what is referred to as Swap Counterparty Priority under the Supplemental Trust

[Handwritten endorsement: A combination of a sudden hole in my schedule and an overload in Judge Jones' have led her to ask that I accept the above-referenced appeals. All parties will appear for a scheduling conference at 11 AM on Thursday, May 26 in Courtroom 14C.

Colleen McMahon
USDJ]

ASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Deed and Drawdown Agreement, LBSF is entitled to be paid sums due from the relevant Issuer before the noteholders' claims are paid under the notes. By contrast, under what is referred to as Noteholder Priority under the Supplemental Trust Deed and Drawdown Agreement, the noteholders are entitled to first priority payments. The relevant provisions of the transaction documents are referred to below as the "Priority Clauses."

### B.   LBHI And LBSF Commence Bankruptcy Proceedings.

On September 15, 2008, LBHI filed a petition for relief under Chapter 11 of the Bankruptcy Code. Eighteen days later, on October 3, 2008, LBSF filed its own Chapter 11 petition. Each filing constituted a separate and independent event of default under the relevant swaps triggering Noteholder Priority. Each filing also entitled the relevant Issuer to terminate the relevant swap agreement. The Issuers exercised their rights to early termination of the swaps in late 2008 and early 2009.

### C.   The Belmont Noteholders Commence Proceedings In England To Enforce Their Senior Rights To The Collateral.

The Dante Programme transaction documents are governed by English law with disputes subject to the jurisdiction of the English courts. Accordingly, on May 13, 2009, Perpetual Trustee Company Limited ("Perpetual"), one of the noteholders in the Dante Programme, commenced an action in the High Court of Justice in the United Kingdom (the "High Court") seeking to require BNY to distribute the collateral in respect of a certain series of notes pursuant to Noteholder Priority. In a separate action, on June 9, 2009, the Dante Noteholders commenced an action in the High Court seeking the same relief for other series of notes. LBSF—which challenges Appellants' rights to intervene in this adversary proceeding—was permitted to intervene to argue that Swap Counterparty Priority should apply.

### D.   The Perpetual Adversary Proceeding.

After intervening in the English proceedings, on May 20, 2009 LBSF filed an adversary proceeding against BNY in the Bankruptcy Court with respect to that series notes held by Perpetual: *Lehman Brothers Special Financing Inc. v BNY Corporate Trustee Services Limited*, (Adv. Pro No. 09-01242 (JMP)) (the "Perpetual Adversary Proceeding"). LBSF's complaint sought, among other claims, a declaratory judgment that: (i) the Priority Clauses are unenforceable *ipso facto* clauses under Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code and (ii) giving effect to the Priority Clauses would contravene the automatic stay provisions in Section 362(a) of the Bankruptcy Code. The Perpetual Adversary Proceeding was commenced against only BNY as trustee for the Perpetual notes even though BNY also was trustee for the Dante Programme.

### E.   The Conflicting Decisions Issued In the U.K. and the U.S.

On July 28, 2009, the High Court ruled in favor of Perpetual and the Belmont Noteholders. The court found as a matter of English law that: (i) separate events of default under the relevant swaps for which LBSF was the Defaulting Party had occurred on September 15,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

2008 and October 3, 2008; (ii) the Priority Clauses were valid, effective and enforceable as a matter of English law; and (iii) in any event, Noteholder Priority had been triggered automatically when LBHI filed Chapter 11 on September 15, 2008. By judgment issued on November 6, 2009, the English Court of Appeal upheld the High Court ruling. On March 31, 2010, the Supreme Court of the United Kingdom granted LBSF permission to appeal (this appeal is still pending).

On January 25, 2010, the Bankruptcy Court ruled for LBSF. The Court issued a published decision that it described as "unprecedented" and "break[ing] new ground" and that it anticipated would be "controversial." *Lehman Bros. Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd.*, 422 B.R. 407, 422 (Bankr. S.D.N.Y. 2010). The Bankruptcy Court acknowledged that English law governed the Dante Programme and that the English courts already had "authoritatively . . . interpreted the Transaction Documents." *Id.* at 416. Nevertheless, without citing any contract law or other authority, the Bankruptcy Court declared that the English court's rulings were "inconsistent with the structure of the Transaction Documents." *Id.* at 418. It then held—in direct conflict with the rulings of the English courts and the plain language of the transactional documents themselves—that the application of Noteholder Priority did not occur upon LBHI's bankruptcy filing and that "the relevant date for . . . testing whether any shifting priorities occurred . . . is the LBSF Petition Date." *Id.*

The Bankruptcy Court then held that the Bankruptcy Code prohibition on *ipso facto* clauses would prevent the application of Noteholder Priority "even if LBHI's petition date were to be considered as the operative date for a claimed reversal of the payment priority." *Id.* at 418-19. Announcing the "first such interpretation" of Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code, the Bankruptcy Court held that the "plain meaning" of the statutes extends, not just to contract terms based on the commencement of a bankruptcy case by the contracting debtor (here, LBSF), but also to contract terms based on the commencement of "presumably any" bankruptcy case involving any affiliate of the contracting debtor. *Id.* at 419. The Bankruptcy Court declared that the separate filings of LBHI and LBSF, eighteen days apart, were "a singular event for purposes of interpreting" the prohibition on enforcement of *ipso facto* clauses, "regardless of how" the statute "may be interpreted in other settings." *Id.* at 420.

On July 19, 2010, after a six-month delay, the Bankruptcy Court entered an order (the "Perpetual Order"), memorializing its January opinion granting summary judgment to LBSF and denying summary judgment to BNY.

### F.     The Perpetual Appeal.

On August 2, 2010, BNY filed a notice of appeal challenging the Bankruptcy Court's decision and order and a motion seeking leave to appeal the interlocutory order. After extensive briefing on BNY's motion, on September 21, 2010, Your Honor granted BNY's motion for leave. In granting leave for appeal, it was held that the Perpetual Order "involved a difficult question of first impression in [the Second Circuit] (and apparently, any other) Circuit," and "has potentially far-reaching ramifications for the international securities markets, and has triggered significant uncertainty in the financial community." *See* Decision and Order Granting BNY

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Corporate Trustee Services Limited's Motion for Leave to Appeal, Adv. Proc. Case No. 09-01242 (JMP), Ch. 11 Case No. 08-13555 (JMP), dated Sept, 21, 2010 [Adv. Proc. Docket No. 117] (the "U.S. Appeal Decision") at slip op. 12, 16.  The court also found that "there is substantial ground for difference of opinion over whether Judge Peck applied the correct legal standard in reaching his decision that LBHI's bankruptcy filing entitled LBSF to claim to the protections of the *ipso facto* provisions." U.S. Appeal Decision at slip op. 13.

More significantly, however, is the fact that Your Honor also pointed to the conduct of LBSF and the Bankruptcy Court in delaying the entry of the Perpetual Order for six months in the face of protest from BNY:

> In the end, it is not difficult to see LBSF's arguments for what they really are: an attempt…to insulate Judge Peck's decision from appellate review for as long as possible.  For many months, LBSF opposed the entry of any order memorializing the Bankruptcy Court's decision; now, it vigorously seeks to forestall any review.  LBSF's efforts to shield Judge Peck's unprecedented and—for LBSF—extremely favorable decision from review are, of course, not surprising; indeed, LBSF does not deny that, since the decision was handed down, it has used it as leverage in settlement negotiations concerning billions of dollars worth of similar transactions.

Following the grant of leave, the parties submitted exhaustive appellate briefs.  Additionally, two amici curiae filed briefs in opposition to Judge Peck's decision.  Before the court could hear the merits of the appeal, LBSF, BNY and Perpetual settled.

### G.     Dante Adversary Proceeding and The Intervention Motion.

On September 14, 2010, LBSF commenced a second adversary proceeding relating to the Dante Programme: *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.* (Adv. Pro. No. 10-03545 (JMP)) (the "Dante Adversary Proceeding").  BNY, as trustee for certain series of notes at issue in the complaint, is a named defendant and as was the case in the Perpetual Adversary Proceeding, the issue of the enforceability of the Priority Clauses in the transaction documents governing the Dante Programme is the central issue.

On January 23, 2011, the Dante Noteholders filed a motion (the "Intervention Motion") to intervene into the Dante Adversary Proceeding based upon the fact that as noteholders and ultimate economic parties-in-interest, the Dante Noteholders have a mandatory right to intervene pursuant to Section 1109(b) of the Bankruptcy Code, which provides that "a party in interest" may be heard "on any issue in a [bankruptcy] case."  The Australian Liquidators also filed a motion for intervention on the same grounds (together, the "Intervention Motions").  LBSF objected to the intervention of the Dante Noteholders and the Australian Liquidators despite LBSF's own intervention in the U.K. High Court proceedings commenced by the Dante Noteholders.  On February 18, 2011, the Bankruptcy Court entered an order denying the

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Intervention Motions (the "Intervention Order"). On February 25, 2011, the Dante Noteholders filed their notice of appeal of the Intervention Order. On March 4, 2011, the Australian Liquidators filed their notice of appeal of the Intervention Order.

\* \* \* \* \*

The Dante Noteholders and the Australian Liquidators have argued and will argue in these Appeals that their right to intervene is based upon the rights granted to them by the same transactional documents that Your Honor has already reviewed and considered. Further, as expressed in the opinion granting BNY leave to appeal the Perpetual Order, Your Honor is well aware of LBSF's desire to shield the Bankruptcy Court's decision from appellate review and to keep the real economic parties in interest, which includes the Dante Noteholders and the Australian Liquidators, out of the proceedings. If permitted to intervene, the Dante Noteholders intend to seek immediate appellate review of the Bankruptcy Court's decision in the Perpetual matter.

Accordingly, we respectfully ask Your Honor to coordinate with Judge Jones and to have the Appeals transferred to Your Honor in the interest of judicial economy and efficiency.

Sincerely,

*[signature]*

Andrew K. Glenn, attorney for the
Dante Noteholders

cc: Honorable Barbara S. Jones
Ralph I. Miller, attorney for LBSF
Eric Leon, attorney for the Australian Liquidators