UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

In re:
LEHMAN BROTHERS HOLDINGS INC., et al.

               Debtors.

_____x

LEHMAN BROTHERS SPECIAL FINANCING INC.,

               Plaintiff,

-against-

THE BANK OF NEW YORK MELLON
CORPORATION, et al.

               Defendants,

_____x

DANTE FINANCE PLC MULTI-ISSUER SECURED
OBLIGATION PROGRAMME NOTEHOLDERS

LIQUIDATORS OF LEHMAN BROTHERS
AUSTRALIA LIMITED,
               Appellants,

-against-

LEHMAN BROTHERS SPECIAL FINANCING INC.,
               Appellee,

_____x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/21/11

11 Civ. 2404 (CM)
11 Civ. 2784 (CM)

### MEMORANDUM AND ORDER GRANTING APPELLEE'S MOTION TO DISMISS APPELLANTS' APPEALS.

McMahon, J.

Appellants Dante Finance PLC Multi-Issuer Secured Obligation Programme Noteholders

(the "Belmont Noteholders") and Liquidators of Lehman Brothers Australia Limited ("LB

Australia") appeal the Bankruptcy Court's denial of their motions to intervene in an adversary

proceeding currently pending in that court. Appellee Lehman Brothers Special Financing Inc.

1

("LBSF") filed a motion to dismiss the appeals. For the reasons that follow, LBSF's motion to dismiss is granted.

## I. BACKGROUND

Appellant the Belmont Noteholders consist of approximately twenty-nine Australian companies, institutions, and other persons that hold ten series of notes in special purpose vehicles that were created in connection with a synthetic debt-repackaged note-issuance program known as the "Dante Programme." The entire "Dante Programme" consists of hundreds of transactions, each known as a "series."

LB Australia is a noteholder that holds interest in five series of notes in the "Dante Programme." The ten series of notes owned by the Belmont Noteholders and the five series of notes owned by LB Australia collectively are the "Dante series."

On September 14, 2010, LBSF commenced a proceeding against the trustees and various issuers of the Dante series (the "Adversary Proceeding"). See Lehman Bros. Special Fin. Inc. v. The Bank of N.Y. Mellon Corp., Case No. 10-03545, ECF No. 1. Among the 110 defendants in the Adversary Proceeding are the issuers of the ten transactions involving the Belmont Noteholders, and the issuers of the five transactions involving LB Australia. LBSF's complaint seeks a declaratory judgment that certain contractual provisions in the governing transaction documents violate the *ipso facto* prohibitions of the Bankruptcy Code and the automatic stay. Id., ECF No. 1 Counts I and II. Simultaneously with the filing of the Adversary Proceeding, LBSF also filed a motion seeking an order staying the proceeding.

On October 20, 2010, the Bankruptcy Court granted LBSF's motion, staying the Adversary Proceeding until July 20, 2011. See In re Lehman Bros. Holdings Inc., Case No. 08-13555, ECF No. 12199 at 2. During the stay, LBSF has engaged in an alternative dispute

2

resolution program in an attempt to settle the dispute without protracted litigation. To date, LBSF and Lehman Brothers Holdings Inc. have resolved 70 matters with 81 counterparties, generating $701,491,967 for the bankruptcy estate.

The Belmont Noteholders and LB Australia filed motions to intervene in the Adversary Proceeding pursuant to 11 U.S.C. § 1109(b) and Rule 7024 of the Federal Rules of Bankruptcy Procedure on January 23, 2011, and January 25, 2011, respectively. On February 16, 2011, the Honorable James M. Peck heard oral argument on the motions and orally denied intervention without prejudice. The Bankruptcy Court issued a written order on February 18, 2011.

Appellants appeal the Bankruptcy Court's denial of intervention. The Belmont Noteholders filed a notice of appeal on February 25, 2011, and LB Australia filed a notice on March 4, 2011. On May 9, 2011, LBSF filed a motion to dismiss the appeals.

## II. DISCUSSION

LBSF argues that this Court lacks jurisdiction over Appellants' appeal, because the Bankruptcy Court's order is not "final," in that it did not address the merits of the intervention motions and was issued without prejudice. Appellants, on the other hand, argue that the Bankruptcy Court's denial of the motions to intervene is a "final" order that is immediately appealable, even if issued "without prejudice."

District courts have appellate jurisdiction over "final judgments, orders, and decrees" of the bankruptcy court pursuant to 28 U.S.C. § 158. See 28 U.S.C. § 158(a)(1). An appeal of a bankruptcy court's "final order" may be taken as of right, but an interlocutory appeal may only be taken with leave of the court. See 28 U.S.C. §§ 158(a)(1) and (3). The "standard for finality in bankruptcy matters is more flexible than in ordinary civil litigation." In re Pegasus Agency, Inc., 101 F.3d 882, 885 (2d Cir. 1996). An order of a bankruptcy court is final if it "completely

3

resolves all of the issues pertaining to a discrete claim, including issues as to the proper relief."
Id. (citation omitted); see also In re Johns-Manville Corp., 824 F.2d 176, 179 (2d Cir. 1987).

The Bankruptcy Court denied the motions to intervene without prejudice, stating that "it
is difficult for me . . . to see a reason why I should grant these motions now." (LBSF's Reply Br.
Ex. B. at 145:16-18.) The court focused on two factors in its decision to deny the intervention
motions: (1) Appellants' purpose for filing the intervention motions, and (2) Appellants'
compliance with Rule 24 of the Federal Rules of Civil Procedure. The court's order does not bar
Appellants from refiling their motions once the stay of the Adversary Proceeding is lifted.

The Bankruptcy Court determined that Appellants sought to "open[] up this litigation and
[make] it a platform for appellate advocacy" in order to "advance" their cause rather than protect
their interest as noteholders. (Id. at 133:19-25, 132:2-8.) The court labeled the intervention
motions "a Trojan horse"—an attempt by Appellants "to vacate the stay in a limited manner in
respect to this litigation." (Id. at 146:4-9, 147:15-23.)

The court also concluded that Appellants' motions did not satisfy the requirement of Rule
24(c). (Id. at 147:15-23.) Appellants did not attach a pleading to their motions setting forth the
potential claims or defenses that would be asserted if the motions were granted.

The Bankruptcy Court concluded the oral argument by stating that the stay was beneficial
to the Adversary Proceeding and "I'm going to continue to enforce it." (Id. at 147:24-25.)

Appellants rely primarily on two cases to argue that the Bankruptcy Court's order is a
final appealable order: Bridgeport Guardians Inc. v. Delmonte, 602 F.3d 46 (2d Cir. 2010), and
Pogliana v. U.S. Army Corps of Engineers, 49 F. App'x 327, 330 (2d Cir. 2002).

Appellants cite Bridgeport Guardians Inc. v. Delmonte, 602 F.3d 46 (2d Cir. 2010), for
the proposition that a denial of intervention is a final order that is immediately appealable. In

4

Bridgeport, the district court denied a motion to intervene by a group of police officers in a race
discrimination suit, concluding that the interest requirement of Rule 24(a)(2) was not satisfied.
Id. at 472. The group of police officers sought to intervene in order to oppose an interim
modification of a remedial order in the lawsuit. The Second Circuit reversed, concluding that the
police officers had satisfied the interest requirement of Rule 24 because the interim modification
affected the police officers' ability to seek a promotion to the rank of Detective. Id. at 474.
Because the interim modification order was in effect and applied to the police officers who
sought intervention, the officers would be prejudiced if they could not appeal the district court's
denial of the motion. Id. By contrast, the Bankruptcy Court's denial of Appellants' motion will
not prejudice Appellants, because the Adversary Proceeding is stayed and Appellants may renew
their motion once the stay is lifted.

Appellants also cite Pogliana v. U.S. Army Corps of Engineers, 49 F. App'x 327, 330 (2d
Cir. 2002), to support their argument that a denial of intervention may be appealed regardless of
whether the denial was "with" or "without prejudice." But Pogliana is also distinguishable. In
that case, plaintiffs sued to enjoin a permit the Army Corps of Engineers granted to a landowner
for construction of a power plant. Id. at 328-29. The district court denied the landowner's
motion to intervene, stating that the denial was without prejudice to the landowner's right to
renew its motion in order to participate in the remedial phase of the lawsuit. Id. at 329. The
landowner, however, was excluded from participating in any portion of the suit prior to the
remedial phase and therefore risked being prejudiced if it was unable to intervene while the
lawsuit proceeded. Here, however, because the Adversary Proceeding is stayed, Appellants will
not be excluded from any part of the lawsuit. Because the denial of their motion was without
prejudice, Appellants may renew their motions after the stay is lifted.

5

Moreover, in Bridgeport and Pogliana, the denial of intervention by the district court disposed, on the merits, of the movants' attempts to intervene. Preventing the movants from appealing the denials of their motions prejudiced the movants in those cases. The opposite is true here. The Bankruptcy Court did not address the merits of Appellants' intervention motions. Rather, the court focused on Appellants' motive for filing the motions and concluded that the motions were designed to interfere with the stay order. Further, because the Adversary Proceeding is stayed, there is no risk that a substantive ruling could prejudice Appellants' interests, and distinguishes this case from others where courts have heard appeals from denials of motions to intervene.

If they are not allowed to intervene in the Adversary Proceeding, Appellants will be unable to seek appellate review of the Bankruptcy Court's January 25, 2010 decision in Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited, Case No. 09-01242 (the "Perpetual Adversary Proceeding"). The central issue in the Perpetual Adversary Proceeding was the enforceability under the Bankruptcy Code of certain priority clauses in the governing transaction documents in the Dante Programme. At the same time that the Perpetual Adversary Proceeding was pending in the Bankruptcy Court, the Perpetual Trustee Company Limited ("Perpetual") and the Belmont Noteholders commenced an action in the High Court of Justice in the United Kingdom (the "High Court") also seeking a determination as to the enforceability of the noteholder priority clauses.

On July 28, 2009, the High Court ruled in favor of Perpetual and the Belmont Noteholders, concluding that the priority clauses were valid and enforceable. On January 25, 2010, the Bankruptcy Court issued an unprecedented and contrary decision in the Perpetual Adversary Proceeding, holding that the priority clauses were unenforceable. See Lehman Bros.

6

Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd., 422 B.R. 407 (Bankr. S.D.N.Y. 2010). Despite its obvious importance, the order was not signed for many months thereafter, preventing any appeal. BNY finally filed a notice of appeal on August 2, 2010, but before this Court could hear the merits, BNY, Perpetual and LBSF settled. Thus, the Bankruptcy Court's unreviewed decision remains the law of the case here.

Appellants argue that they are prejudiced because LBSF is using the Bankruptcy Court's unreviewed decision, which is unfavorable to Appellants, "as the state of the art to define the bankruptcy issues that are being considered in the U.K. court." (LBSF's Reply Br. Ex. B. at 113:21-23.) Put otherwise, Appellants contend that they are faced with a risk that an English Court of Appeal will be unduly influenced by Judge Peck's unprecedented yet unreviewed decision to overturn the ruling of the High Court.

There is indeed a risk that the English Court of Appeal will construe Judge Peck's decision as not only representing a new development in U.S. bankruptcy law (which it is) but also as settled law (which it is not, since it has never been tested in a higher court). It is also the case that, to a casual but interested observer, it might appear that the stay is being used (as perhaps the many months before the order was signed was used) to keep the underlying decision from being reviewed. But the harm Appellants have identified is a risk of prejudice in a separate independent proceeding pending before a foreign court and not, as was the case in Bridgeport and Pogliana, a risk of prejudice in the proceeding in which Appellants seek to intervene. Moreover, Appellants' alleged prejudice is speculative. As the Bankruptcy Court did not deny their intervention motions on the merits, but, rather, concluded that the motions were premature, Appellants may renew their motions once the stay is lifted. And I have no doubt that able counsel in England, assisted by their colleagues in this country, can make the English Court of

7

Appeal aware of the procedural posture of this case and of the fact that, sooner or later, Judge
Peck's one-of-a-kind decision will be tested on appeal.

LBSF's argument that this case is analogous to United States v. City of Milwaukee, 144
F.3d 524 (7th Cir. 1998), is persuasive. In City of Milwaukee, the district court denied the
movant's motion for intervention without prejudice, concluding that the movant had not
complied with Rule 24(c) because the motion was not accompanied by a pleading. Id. at 527.
The movant appealed and the Seventh Circuit dismissed the appeal, holding that because "the
decision of the district court was not a final decision, we lack the authority to review it." Id. at
528. The Seventh Circuit explained that the district court's decision "did not resolve definitely
whether [the movant] ought to be allowed to intervene in this litigation and is therefore not a
final decision . . . ." Id. at 529. Indeed, the court stated that the district court "expressed its
intent not to reach the merits of the motion to intervene until it was properly presented"—that is,
until a pleading as required by Rule 24(c) was attached to the motion. Id. In the same way that
the district court "would not consider [the movant's] motion until it conformed to the procedural
requirements of Rule 24(c)," the Bankruptcy Court stated that it would not consider Appellants'
motions until the stay is lifted. (LBSF's Reply Br. Ex. B. at 145:16-18.)

The Bankruptcy Court did not reach the merits of Appellants' intervention motions, and
therefore the order did not "completely resolve all of the issues pertaining to" those motions.
See In re Prudential Lines, Inc., 59 F.3d 327, 331 (2d Cir. 1995); see also City of Milwaukee,
144 F.3d at 530. District courts have appellate jurisdiction over final orders of the bankruptcy
court. See 28 U.S.C. § 158(a)(1). Thus, because the Bankruptcy Court's denial of Appellants'
intervention motions was not a "final" order, this Court lacks jurisdiction to hear Appellants'
appeal of that denial.

8

**III. CONCLUSION**

For the reasons discussed, Appellants' appeal of the Bankruptcy Court's February 18, 2011 order is dismissed. The Docket Clerk is instructed to remove docket entry six from the Court's list of pending motions.

Dated: June 21, 2011

_____

U.S.D.J.

BY EFC TO ALL COUNSEL

9